1
2
3
4
5
6
7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No.  2:11-cr-526-JAM-EFB P

12                 Respondent,

13            vs.                                  ORDER AND

14   TIMOTHY GEVOCK,                               FINDINGS AND RECOMMENDATIONS

15                 Movant.

16

17          Movant, Mr. Gevock, is a federal prisoner proceeding pro se with a motion to vacate, set

18   aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  On June 26, 2012, pursuant to his

19   plea of guilty, Gevock was convicted of receipt of child pornography, in violation of 18 U.S.C.

20   §2252 (a)(2).  Gevock now seeks post-conviction relief on two grounds: that his trial counsel

21   rendered ineffective assistance; and that his sentence was imposed in violation of his Sixth

22   Amendment right to trial by jury.  Gevock has also filed a motion for default judgment.

23          For the reasons set forth below, both motions must be denied.

24   **I. Background**

25          On June 26, 2012, Gevock entered a plea of guilty to one count of receipt of child

26   pornography, in violation of 18 U.S.C. § 2252(a)(2).  ECF No. 27; ECF No. 59 at 17.  In the

27   _____

28   [1]  This motion was assigned, for statistical purposes, the following civil case number:
     2:13-cv-2395-JAM-EFB.

                                                      1

1   underlying plea agreement, the parties stipulated that movant's base offense level was 22,

2   pursuant to United States Sentencing Guidelines (USSG) § 2G2.2(a) (2).  ECF  No. 29 at 8.  The

3   parties also stipulated to three two-level increases in the base offense level on the grounds that the

4   offense involved the use of a prepubescent minor, the use of a computer, and between 10 and 150

5   images.  *Id.*   The parties reserved the right to argue for or against the applicability of a two-level

6   reduction in the base offense level on the grounds that Gevock did not intend to traffic in or

7   distribute images, and a four-level increase in the base level on the grounds that the images found

8   on Gevock's computer depicted sadistic and masochistic conduct.  *Id.* at 9.  The plea agreement

9   provided that the parties anticipated the total offense level would fall between 26 and 32, and that

10  the offense level adjusted downward for Gevock's acceptance of responsibility would be between

11  23 and 29.  *Id.*

12          The preliminary Presentence Report was made available to the parties on August 9, 2012.

13  Presentence Report (PSR) at 1.[2]  The probation officer agreed with the parties' stipulations, set

14  forth above.  *Id.* at ¶¶ 15, 17, 19, 20.  The probation officer found that Gevock did not intend to

15  traffic in, or distribute material, and that his offense level should therefore be reduced by two

16  levels pursuant to U.S.S.G. § 2G2.2.  *Id.* at ¶ 16.  The probation officer also found that a four-

17  level increase should be imposed because the offense involved material that portrayed sadistic or

18  masochistic conduct, pursuant to U.S.S.G. § 2G2.2 (b) (4).[3]  *Id.* at ¶ 18.  The probation officer

19  found applicable a two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1

20  because Gevock "knew or should have known that the victims of the offense were vulnerable."[4]

21  *Id.* at ¶ 21.  The probation officer concluded that the total offense level following acceptance of

22  responsibility was 29, and the sentencing guideline range was 87 to 108 months.  *Id.* at section

23  entitled "Justification and Recommendations."

24  _____

25          [2]  The court has independently obtained and reviewed the presentence report in this case.

26          [3]  USSG § 2G2.2 (b)(4) provides, "If the offense involved material that portrays sadistic or
    masochistic conduct or other depictions of violence, increase by 4 levels."

27
28          [4]  USSG § 3A1.1(b)(1) provides for a 2 level increase if "the defendant knew or should
    have known that a victim of the offense was a vulnerable victim."

On October 3, 2012, Gevock's trial counsel sent an email to the probation officer, objecting to certain portions of the PSR.  ECF No. 59 at 21.  With respect to the guideline calculations, counsel questioned the recommendation of a four-level increase in the base offense level for images that were sadistic or masochistic.  *Id.*  Trial counsel also objected to some of the facts contained in the PSR.  *Id.*

A final PSR report was issued on October 23, 2012.  *Id.* at 28.  Therein, the probation officer found a total offense level, after taking into consideration Gevock's acceptance of responsibility, of 29.  PSR at ¶ 26.  The final PSR added six levels to the base offense level, in accordance with the parties' stipulations contained in the plea agreement.  *Id.* at ¶¶ 15, 17, 19, 20.  The probation officer found a two-level reduction because Gevock did not intend to distribute material, a four-level increase on the grounds that the images were sadistic or masochistic, and a two-level vulnerable victim upward adjustment.  *Id.* at ¶¶ 16, 18, 21.  The PSR found a guideline range of 87 to 108 months, and recommended a sentence of 96 months imprisonment.  *Id.* at "Findings and Recommendation," and ¶ 70.  It also recommended a lifetime period of supervised release.  *Id.* at ¶ 71.

Gevock's trial counsel filed formal objections to the final PSR on November 2, 2012.  ECF No. 36.  Therein, he objected to the probations officer's recommendation of a two-level increase in the base level for a vulnerable victim, pursuant to USSG § 3A1.1(b)(1).  *Id.* at 1.  Counsel also objected to a recommended special condition of supervised release that prevented Gevock from visiting regular public libraries and book stores and another condition of release to the extent it prevented Gevock from having contact with his own daughter.  *Id.* at 2.  Trial counsel did not object to the four-level increase for sadistic and masochistic images.

The government filed a sentencing memorandum on November 6, 2012.  ECF No. 37.  Therein, the government: (1) conceded that a two-level decrease in the offense level pursuant to USSG § 2G2.2(b)(1) should apply because the government probably would not be able to prove that Gevock intended to traffic in or distribute material; (2) argued in support of the four-level increase in the base offense level for sadistic or masochistic images; and (3) stated that it would not seek application of the two-level vulnerable victim adjustment.  *Id.* at 3, 4, 5.  The

1   government calculated a total offense level of 27 and asked the court to impose a sentence of 87

2   months imprisonment.  *Id.* at 3, 5.

3       Gevock's trial counsel filed a sentencing memorandum on November 6, 2012.  ECF No.

4   38.  Therein, he argued that the vulnerable victim upward adjustment should not apply and that

5   the applicable guideline range was 70 to 87 months.  *Id.* at 1.  He included extensive argument in

6   support of a requested sentence of 60 months in prison.  *Id.*  Among other things, he argued that

7   the four point increase in the base level for images depicting acts of sadism or masochism should

8   not apply and that the general "factors to be considered in imposing a sentence" pursuant to 18

9   U.S.C. § 3553 (a) supported a sentence of only 60 months.  *Id.* at 2-6.  In support of the latter

10  argument, Gevock submitted a psychologist's report under seal and exhibits documenting sexual

11  offender treatment programs within the United States Bureau of Prisons.  ECF Nos. 38, 45.

12      Gevock was sentenced on November 13, 2012.  ECF No. 46.  The trial court sustained

13  Gevock's objection to the two level vulnerable victim enhancement and did not impose that

14  enhancement.  ECF No. 59 at 28.  The trial court agreed to several other conditions requested by

15  Gevock's counsel, including supervised visitation with Gevock's daughter and use of the public

16  library.  *Id.* at 29-30.  The court found that the total offense level was 27 and the guideline range

17  was 70 to 87 months.  *Id.* at 31.

18      At the sentencing hearing, Gevock's counsel argued extensively that Gevock should

19  receive a sentence of no higher than the mandatory minimum of 60 months.  *Id.* at 31-36.  Prior to

20  imposing sentence, the trial court noted that defense counsel had raised arguments with respect to

21  every factor to be considered under 18 U.S.C. § 3553 and stated that he "appreciate[d] the

22  discussion."  *Id.* at 41.  The judge stated that the psychologist's report submitted by counsel was

23  helpful in understanding Gevock's actions.  *Id.* at 42.  The judge concluded that a high end

24  sentence was not warranted under the facts of the case.  *Id.* at 43.  He sentenced Gevock to a term

25  of 70 months in prison, 17 months less than the sentence requested by the government.  *Id.*

26      Gevock filed his § 2255 motion in this court on November 18, 2013.  The government

27  filed a response on April 10, 2014.  On April 24, 2014, Gevock filed a motion for entry of default

28  judgment.

1    **II.  Law Applicable to Motions Pursuant to 28 U.S.C. § 2255**

2           A federal prisoner making a collateral attack against the validity of his or her conviction

3    or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to

4    28 U.S.C. § 2255, filed in the court which imposed sentence.  *United States v. Monreal*, 301 F.3d

5    1127, 1130 (9th Cir. 2002).  Under § 2255, the federal sentencing court may grant relief if it

6    concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the

7    United States.  *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172

8    F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a petitioner must demonstrate the existence of

9    an error of constitutional magnitude which had a substantial and injurious effect or influence on

10   the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also*

11   *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's*

12   harmless error standard applies to habeas cases under section 2255, just as it does to those under

13   section 2254.")  Relief is warranted only where a petitioner has shown "a fundamental defect

14   which inherently results in a complete miscarriage of justice."  *Davis*, 417 U.S. at 346.  *See also*

15   *United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

16          Under § 2255, "a district court must grant a hearing to determine the validity of a petition

17   brought under that section, '[u]nless the motions and the files and records of the case conclusively

18   show that the prisoner is entitled to no relief.'"  *United States v. Blaylock*, 20 F.3d 1458, 1465

19   (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's

20   allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible

21   or patently frivolous as to warrant summary dismissal."  *United States v. McMullen*, 98 F.3d

22   1155, 1159 (9th Cir. 1996) (internal quotation marks omitted).  *See also United States v. Withers*,

23   638 F.3d 1055, 1062-63 (9th Cir. 2011); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir.

24   2003).  To warrant a hearing, therefore, the movant must make specific factual allegations which,

25   if true, would entitle him to relief.  *Withers*, 638 F.3d at 1062; *McMullen*, 98 F.3d at 1159.  Mere

26   conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing.

27   *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

28   /////

1    **III.  Movant's Claims**

2            In the introductory portion of his § 2255 motion, Gevock advises the court that he is

3    raising claims of ineffective assistance of counsel and a claim based on the United States

4    Supreme Court decision in *Alleyne v. United States*, ___U.S.___, 133 S. Ct. 2151 (2013).  ECF

5    No. 50 at 1.  In his "preliminary statement," Gevock claims that his trial counsel "at no time

6    presented or reviewed with him any evidence that the Government may have shared with counsel

7    as required in discovery process."  *Id.* at 3.  He argues that he did not "have the benefit of a

8    meaningful adversarial testing of the Government's case against him."  *Id.*  Gevock also claims

9    that he asked his trial counsel to investigate "various aspects of the charges," but "the requests

10   were not pursued."  *Id.*  He also alleges that his trial counsel did not discuss with him the

11   applicability of the Sentencing Guidelines, thus "calling into question counsel's understanding of

12   the application of the Guidelines to Petitioner's case."  *Id.*

13           Gevock notes that he did not admit to the underlying facts supporting the sentence

14   enhancements to which he stipulated, but rather entered into an agreement that stipulated to the

15   sentence enhancements themselves.  *Id.* at 4.  Specifically, he argues that "by stipulating to the

16   enhancements, Petitioner never expressly admitted responsibility for the underlying elements to

17   the offense which ostensibly would support such enhancements."  *Id.* at 6.  Gevock claims that his

18   trial counsel rendered ineffective assistance because the charges to which he pled guilty "did not

19   support nor justify enhancements applied to Petitioner's sentencing scheme."  *Id.* at 4.

20           In a section entitled "issues presented," Gevock claims that: (1) his trial counsel provided

21   ineffective assistance "prior to formal entry of guilty plea and through the sentencing

22   proceedings;" (2) trial counsel's lack of understanding of the Sentencing Guidelines resulted in

23   "the unchallenged application of sentencing enhancements;" and (3) trial counsel rendered

24   ineffective assistance in failing to object to the trial court's "inadvertent error in the application of

25   sentencing enhancements to Petitioner's sentencing scheme by judicial factfinding based upon the

26   preponderance of evidence."  *Id.* at 5.  Gevock advises the court that "while [he] seeks merely to

27   modify his sentence under the advisory Sentencing Guidelines, enhanced only for factors charged

28   in the indictment or admitted to by Petitioner; he does not preclude the complete withdrawal of

6

his guilty plea if the Court would provide such remedy." *Id.* at 9.  He argues that because of trial counsel's lack of understanding of the Guidelines, he was "subject to a longer prison sentence range, that while advisory, gave the district court judge a point of reference that was higher than warranted." *Id.*

Gevock also argues that the application of sentence enhancements that increased his sentence beyond the mandatory minimum of 60 months was "a significant overreach on the part of the Government." *Id.*  He implies that he should have been charged with the lesser crime of possession of child pornography and not the greater crime of receipt of child pornography, which carries a higher sentence.  *Id.* at 12.  Gevock also argues that his trial counsel rendered ineffective assistance in failing to "negotiate a more reasonable charge of possession of child pornography." He argues this charge would have more closely reflected his actual behavior, involving the possession of "six images" and no prior history of "sexually deviant or dangerous behavior" or "a history of involvement in online child pornography 'communities' or chat rooms." *Id.* at 13.

Gevock claims that his sentence violates his Sixth Amendment right to trial by jury because he did not admit "the facts supporting [his] exceptional sentence." *Id.* at 11.  Gevock also argues that his trial counsel rendered ineffective assistance in "failing to recognize" that because he did not specifically admit to the facts underlying his sentence, the sentence violated the Sixth Amendment.  *Id.* at 12.  He states that the Sentencing Guidelines have been "criticized" for "disproportionately producing overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and general widespread inconsistent application." *Id.* at 13.

Gevock also claims that his trial counsel "failed to mount a challenge to any of the enhancements," but instead "advised Petitioner he was going 'to get 10 years' and had no choice but to take the plea agreement." *Id.*  He states that his trial counsel did not discuss the Sentencing Guidelines with him and did not explain the "nature of the enhancements, nor reviewed the contents of discovery with Petitioner to determine if the enhancements proffered by the Government were supported by the evidence." *Id.* at 14.

Gevock argues, generally, that the sentence enhancement pursuant to USSG § 2G2.2 (b) (4) for images that are sadistic or masochistic should not have been imposed.  *Id.*  He contends

1    that this enhancement "is not supported by the findings of the grand jury, nor admitted by

2    Petitioner." *Id.* He further notes that a 2012 report to Congress suggested that some

3    enhancements, including the enhancement for use of a computer, may improperly fail to

4    differentiate among offenders in terms of their culpability. *Id.* at 15. He argues that "an

5    argument can be made" that the application of a "use of the computer" sentence enhancement

6    amounts to "double counting" because "the use of a computer is already accounted for in the

7    current language of the statutes." *Id.* Gevock also argues that the two-level enhancement

8    imposed for receipt of at least ten images (USSG § 2G2.2(b)(7)(A)) should not have been

9    imposed because he "never admitted responsibility for more than the receipt of 6 images and

10   there is no proof he received more than 6 images." *Id.* at 16.

11       Gevock claims that his sentence violates the Sixth Amendment because "the elements of

12   the offense" that supported the enhancements to his sentence were not admitted by him or found

13   by a jury beyond a reasonable doubt. *Id.* at 17. He argues, for instance, that the indictment did

14   not charge him with receipt of more than 6 images and it did not charge him with receiving

15   images depicting sadistic, masochistic, or violent conduct. *Id.* He argues that the Government

16   "entered into the plea agreement in bad faith, and the defense counsel merely acquiesced to the

17   agreement without rendering adequate effort to effectively negotiate then advise Petitioner." *Id.*

18   at 18. He contends that, "[b]ut for defense counsel's ineffective assistance, Petitioner would,

19   more likely than not, have refused to enter into the plea agreement." *Id.* at 20.

20       Gevock states that he is entitled to "a six level reduction in offense level to an offense

21   level of 21." *Id.* He requests that the court grant him an additional two level reduction that

22   "eliminates the 'double counting' of computer use." *Id.* He states that "the overall effect would

23   result in an offense level of 19," with a resulting sentencing range of 30-37 months. *Id.* at 20-21.

24   Gevock requests that this court resentence him "to a term of between 30 to 37 months

25   imprisonment" and modify his term of supervised release from life to 5 years. *Id.* at 23. He also

26   suggests that if the court does not wish to depart from the mandatory minimum sentence of 60

27   months, "that this court resentence him to a term of 60 months followed by a term of supervised

28   release of 5 years." *Id.*

1    In the concluding section of his § 2255 motion, Gevock claims that his trial counsel

2    "failed to adequately research sentencing option, or investigate aspects of the case that Petitioner

3    would have benefitted from had it proved exculpatory." *Id.* at 22.  He argues that his guilty plea

4    "was not intelligent and knowing" because he "did not know the basis of the enhancements used

5    in his sentencing scheme and stipulated to them without admitting to any underlying elements

6    required to support the enhancements." *Id.*  He further argues that his trial counsel simply

7    "acquiesced" to the government's plea offer without an "adequate understanding of the

8    mechanics of the Sentencing Guidelines, or researching sentencing options." *Id.* at 23.

9    **IV.  Analysis**

10    **A.  Challenges to Sentence**

11    Although Gevock articulates all of his claims within the general framework of a claim of

12    ineffective assistance of counsel, he actually appears to be challenging the trial court's imposition

13    of enhancements to his sentence under the Sentencing Guidelines.  To the extent Gevock is

14    attempting to raise direct challenges to the imposition of these enhancements, his claims have

15    been waived and are not properly before the court.

16    In his plea agreement, Gevock waived the right to file an appeal of his conviction and

17    "any aspect of the sentence imposed," as long as his sentence was no longer than the top of the

18    Sentencing Guidelines range.  ECF No. 29 at 10.  He also waived the right to file a § 2255

19    motion.  He "specifically agree[d] not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking

20    his conviction or sentence." *Id.*  In open court, Gevock agreed that his plea agreement waived his

21    right to "collaterally attack or appeal all or any part of [his] plea" or any sentence he might

22    receive, so long as the sentence was not greater than the top of the sentencing guideline range

23    "determined by the court and consistent with the stipulations set forth in the plea agreement." *Id.*

24    at 14-15.

25    There is no constitutional right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

26    Thus, a knowing and voluntary waiver of appeal rights in a negotiated plea agreement is

27    enforceable in federal court. *United States v. Navarro-Botello*, 912 F.2d 318, 319 (9th Cir. 1990).

28    /////

9

1   *See also United States v. Watson*, 582 F.3d 974, 986 (9th Cir. 2009) ("A defendant's waiver of his

2   appellate rights is enforceable if the language of the waiver encompasses his right to appeal on

3   the grounds raised, and if the waiver was knowingly and voluntarily made"); *United States v.*

4   *Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (upholding waiver of right to collateral review).  A

5   reviewing court "looks to the circumstances surrounding the signing and entry of the plea

6   agreement to determine whether the defendant agreed to its terms knowingly and voluntarily."

7   *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996).

8          During the plea colloquy Gevock stated that he was not under the influence of drugs or

9   alcohol.  ECF No. 59 at 8.  He answered in the affirmative when asked by the trial judge whether

10   he was "fully satisfied with the representation and advice given to you in this case by your

11   attorney."  *Id.*  Gevock stated that he was entering the plea voluntarily.  *Id.* at 9.  He also agreed

12   that he was "fully satisfied" with the representation and advice given by his counsel, and that he

13   was entering into the plea agreement because he was guilty.  *Id.* at 8-9.  The trial court "reviewed

14   the charges and each of the terms of the plea agreement and asked [Gevock] questions to ensure

15   that he understood the contents of his plea agreement."  *Baramdyka*, 95 F.3d at 844.  The court

16   also reviewed and summarized the guideline stipulations in the plea agreement.  ECF No. 59 at

17   10-11.  Gevock agreed that these were the terms of his plea agreement as he understood them.  *Id.*

18   at 11.

19          Gevock affirmed that he had "had enough time to discuss with your attorney how the

20   advisory sentencing guidelines and the statutory sentencing factors might apply to your case."  *Id.*

21   at 13.  Trial counsel agreed that Gevock had a general understanding of how the guidelines and

22   statutory sentencing factors applied to his case.  *Id.*  The trial court concluded that "there's been a

23   knowing and voluntary waiver of the right to collaterally attack or appeal the plea or sentence by

24   [Gevock]."  *Id.* at 15.  These contemporaneous on-the-record statements by Gevock carry

25   substantial weight in the assessment of the voluntariness of Gevock's guilty plea, and "carry a

26   strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The plea

27   agreement and the circumstances surrounding its adoption establish that Gevock knowingly and

28   /////

1    voluntarily waived his right to appeal.  *See Baramdyka*, 95 F.3d at 844.  Accordingly, Gevock's

2    challenges to his sentence have been waived.

3            **B.  Ineffective Assistance of Counsel**

4            Waivers of the right to appeal cannot bar ineffective assistance of counsel claims

5    associated with the negotiation of plea agreements.  *Washington v. Lampert*, 422 F.3d 864, 871

6    (9th Cir. 2005) ("[a] plea agreement that waives the right to file a federal habeas petition pursuant

7    to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim that challenges the

8    voluntariness of the waiver.");  *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (An

9    appeal waiver may not "categorically foreclose" defendants from bringing § 2255 proceedings

10   alleging ineffective assistance of counsel "based on counsel's erroneously unprofessional

11   inducement of the defendant to plead guilty or accept a particular plea bargain").  However, to the

12   extent that a habeas petitioner seeks to claim he received ineffective assistance of counsel

13   premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it

14   related to the decision to enter his guilty plea.  Any ineffective assistance claims relating to other,

15   earlier actions by his counsel are barred by the holding in *Tollett v. Henderson*, 411 U.S. 258, 267

16   (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty

17   of the offense with which he is charged, he may not thereafter raise independent claims relating to

18   the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").  *Moran

19   v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994), *superseded on other grounds by statute*, AEDPA,

20   Pub.L. No. 104–132, 110 Stat. 1214, as stated in *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th

21   Cir. 2008).  *See also Givens v. Sisto*, No. C 08-05231 JW (PR), 2010 WL 1875766 (N.D. Cal.

22   May 7, 2010) ("the only challenges left open in federal habeas corpus after a guilty plea is the

23   voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.").

24           Gevock's allegations that his trial counsel rendered ineffective assistance in failing to

25   share discovery with him prior to his guilty plea, failing to "examine evidence held" by the

26   government, failing to conduct "adversarial testing of the Government's case," failing to

27   investigate aspects of his case or the charges against him, and failing to negotiate the filing of

28   lesser charges by the government, all involve conduct by counsel that occurred prior to the entry

11

1   of Gevock's plea of guilty.  Accordingly, these claims have been waived by the terms of his plea

2   agreement.  *Tollett*, 411 U.S. at 267.

3        Even if these claims had not been waived, they are vague and conclusory and should be

4   denied on that basis.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (quoting *James v.*

5   *Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are

6   not supported by a statement of specific facts do not warrant habeas relief'")).  For instance,

7   Gevock claims that his trial counsel did not review evidence or discovery with him.  However, he

8   fails to explain the nature of any such discovery or how it would have helped him.  Gevock also

9   claims that his trial counsel failed to investigate "various aspects of the charges."  ECF No. 50 at

10  1.  He does not specify which areas counsel should have investigated further, or how further

11  investigation would have resulted in a different outcome.  Gevock also argues, without providing

12  factual details, that his trial counsel failed to "effectively negotiate then advise petitioner."  *Id.* at

13  18.  These vague allegations are insufficient to support a claim of ineffective assistance of

14  counsel.  *See Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective

15  assistance claim denied where he presented no evidence concerning what counsel would have

16  found had he investigated further, or what lengthier preparation would have accomplished).

17  Gevock's allegations fail to rebut the "strong presumption" that his trial counsel rendered

18  competent assistance.  *See Detrich v. Ryan*, 740 F.3d 1237, 1276 (9th Cir. 2013).

19       Gevock implies that the failure of his trial counsel to understand and to discuss the

20  Sentencing Guidelines with him prior to the entry of his plea rendered his plea involuntary.  He

21  also argues that his trial counsel rendered ineffective assistance in failing to raise effective

22  arguments at the sentencing proceedings.  For the following reasons, these claims should be

23  denied.

24       The applicable legal standards for a claim of ineffective assistance of counsel are set forth

25  in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

26  must show that (1) his counsel's performance was deficient and that (2) the "deficient

27  performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or

28  her representation "fell below an objective standard of reasonableness" such that it was outside

1   "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal

2   quotation marks omitted).  A defendant must also show that counsel's deficient performance

3   resulted in prejudice.  *Id.* at 687.  In the context of this case, Gevock must show "that there is a

4   reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

5   have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

6          A reviewing court is required to make every effort "to eliminate the distorting effects of

7   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

8   conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Harrington v.*

9   *Richter*, 562 U.S. 86, 107 (2011).  Reviewing courts must also "indulge a strong presumption that

10  counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

11  466 U.S. at 689.  This presumption of reasonableness means that the court must "give the

12  attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible

13  reasons [defense] counsel may have had for proceeding as they did." *Cullen v.*

14  *Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

15         A number of Gevock's claims of ineffective assistance of counsel during the plea bargain

16  process are not supported by the court record.  For instance, Gevock's assertion that his trial

17  counsel failed to discuss with him the applicability of the Sentencing Guidelines to his case is

18  directly contradicted by the record of the plea proceedings, wherein Gevock stated he had "had

19  enough time to discuss with your attorney how the advisory sentencing guidelines and the

20  statutory sentencing factors might apply to your case." ECF No. 59 at 13.  Moreover, Gevock's

21  trial counsel stated in open court that Gevock had a general understanding as to how the

22  guidelines and sentencing factors applied to his case.  *Id.*  Gevock did not object to this statement

23  by his counsel.  *Id.*  Similarly, at his sentencing hearing Gevock replied in the affirmative when

24  the trial judge asked him whether he had "had a chance to review the [presentence report" and

25  whether he had "had enough time to discuss it with your attorney." *Id.* at 28.  With respect to

26  Gevock's claim that his trial counsel told him he was "going to get 10 years" and had no choice

27  but to "take the plea agreement," these allegations are belied by Gevock's statement at the change

28  /////

13

1   of plea hearing that no-one had made any promises or assurances to him of any kind to induce

2   him to enter a guilty plea. *Id.* at 11, 13.

3        Gevock claims that his trial counsel rendered ineffective assistance in failing to object to

4   or challenge "the application of various sentencing enhancements" imposed by the trial judge.

5   However, as described above, counsel did challenge the enhancement for a vulnerable victim and

6   the four point increase for images depicting acts of sadism or masochism.  As a result of

7   arguments made by Gevock's counsel, the trial court declined to apply the probation officer's

8   recommended vulnerable victim increase, and imposed a sentence of 17 months less than the

9   government's recommended sentence.  *Id.* at 28.  Gevock fails to explain what additional

10  arguments his counsel should have made that would have led to a different outcome or to

11  demonstrate that any sentence enhancements he received were improperly imposed.  As pointed

12  out by respondent, in the plea agreement Gevock admitted to three two-level increases in his base

13  offense level and the evidence supported those enhancements.  *See* ECF No. 58 at 11-12.

14       Gevock claims that his trial counsel improperly failed to argue for a downward departure

15  in his sentence.  However, counsel argued at the sentencing proceedings that Gevock should

16  receive a sentence of 60 months, lower than the guideline range of 70-87 months.  Further, the

17  sentence movant received was consistent with the plea agreement which he signed.  "A defendant

18  who pleads guilty and expressly waives the statutory right to raise objections to a sentence may

19  not then seek to appeal the very sentence which itself was part of the agreement." *United States*

20  *v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990). *See also Navarro-Botello*, 912 F.2d at 320.  In any

21  event, movant has failed to demonstrate that he was entitled to the downward departures that he

22  now requests.  Therefore, he has failed to establish prejudice with respect to his claim that his trial

23  counsel rendered ineffective assistance in failing to make effective arguments at the sentencing

24  proceedings. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile

25  action can never be deficient performance").

26       In sum, Gevock has failed to show that the actions of his trial counsel with respect to the

27  imposition of his sentence were outside the "wide range of professional assistance" or that any

28  /////

1  actions by trial counsel rendered his guilty plea involuntary.  Accordingly, he is not entitled to

2  relief on his claims of ineffective assistance of counsel.

3        **C. Sixth Amendment Violation**

4        Citing *United States v. Alleyne*, Gevock claims that his sentence violates his Sixth

5  Amendment right to a jury trial because the facts used to support his sentence enhancements were

6  not specifically admitted by him or alleged in the indictment.  In *Alleyne*, the United States

7  Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is

8  an element of the offense that must be submitted to the jury and found beyond a reasonable doubt.

9  133 S. Ct. 2151 (2013).  Gevock has failed to explain how or whether the holding in *Alleyne*,

10  which is directed to increases in the statutory maximum or mandatory minimum sentence for a

11  crime, impacts the sentence he received in this case.  The decision in *Alleyne* does not apply to

12  sentencing enhancements or upward departures from sentencing guideline ranges.  The Sixth

13  Amendment is not violated when a sentencing court finds facts while exercising its discretion to

14  impose a sentence within the statutorily prescribed range.  *See United States v. Vallejos*, 742 F.3d

15  902, 906 (9th Cir. 2014) (upholding a sentence enhancement after a challenge based on the

16  decision in *Alleyne*).  As noted by respondent, the mandatory minimum in this case was

17  established by Gevock's plea of guilty to receipt of child pornography, in violation of 18 U.S.C.

18  § 2252(a)(2).

19        In any event, the *Alleyne* decision does not provide Gevock with a basis for relief because

20  it is not retroactively applicable to cases on collateral review.  The Ninth Circuit, as well as every

21  other Circuit court to have considered this issue, has concluded that *Alleyne* does not apply

22  retroactively to cases that became final before that decision was announced.  *See Hughes v.*

23  *United States*, 770 F.3d 814, 818-19 (9th Cir. 2014); *In re Mazzio*, 756 F.3d 487, 491 (9th Cir.

24  2014); *see also United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Kemper*, 735 F.3d

25  211, 212 (5th Cir. 2013); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013); *In re Payne*,

26  733 F.3d 1027, 1029–30 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir.

27  2013); *Chester v. Warden*, No. 12-15119, 552 F. App'x. 887, 891 (11th Cir. 2014); *United States*

28  *v. Stewart*, 540 F. App'x. 171, 2013 WL 5397401, at * 1 n.1 (4th Cir. Sept. 27, 2013); *Broussard*

*v. United States*, No. 1:03-CR-05054, 2014 WL 3530003, at *4 (E.D. Cal. July 15, 2014) (noting that district courts in the Ninth Circuit have "uniformly" concluded that the decision in *Alleyne* is not retroactive, and citing cases); *Jackson v. United States*, Nos. 5:11-CR-00231-F-1, 5:13-CV-00284-F, 2014 WL 4060270, at *4 (E.D.N.C. Aug. 14, 2014) (motion to amend §2255 motion to add claim based on *Alleyne* denied because *Alleyne* not retroactive to cases on collateral review). Accordingly, Gevock is not entitled to relief on this claim.

**V.  Motion for Entry of Judgment**

On April 24, 2014, Gevock filed a motion for entry of judgment, arguing that respondent failed to file a timely opposition to his § 2255 motion.  ECF No. 60.  A review of the docket reflects that the respondent was granted an extension of time until April 9, 2014 to file its opposition to Gevock's § 2255 motion.  Although respondent's opposition is dated April 9, 2014, it appears on the court docket with a filed date of April 10, 2014.  Under these circumstances, the court does not find good cause to grant Gevock's motion for judgment.  In addition, the availability of a motion for entry of a default judgment exists under the Federal Rules of Civil Procedure but is not contemplated in the context of a § 2255 motion.  *See Ramirez-Morazan v. United States*, Nos. 5:11-CR-18-1H, 5:13-CV-329-H, 2014 WL 3110017, at * 4 (E.D.N.C. July 7, 2014).  Moreover, under the Federal Rules of Civil Procedure a default judgment is not available against the United States unless "the claimant establishes a claim or right to relief by evidence that satisfies the court."  Fed. R. Civ. P. 55(d).  For the reasons set forth above, Gevock has failed to demonstrate a right to relief on his § 2255 motion.

**VI.  Conclusion**

Accordingly, IT IS HEREBY ORDERED that movant's April 24, 2014 motion for entry of judgment (ECF No. 60) is denied.

Further, IT IS HEREBY RECOMMENDED that movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 50) be denied and that Clerk be directed to close the companion civil case, No. 2:13-cv-2395-JAM-EFB.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4   shall be served and filed within fourteen days after service of the objections.  Failure to file

5   objections within the specified time may waive the right to appeal the District Court's order.

6   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

7   1991).  In his objections petitioner may address whether a certificate of appealability should issue

8   in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section

9   2255 Cases (the district court must issue or deny a certificate of appealability when it enters a

10  final order adverse to the applicant).

11  DATED:  August 9, 2016.

12                                      EDMUND F. BRENNAN
                                        UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28